UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, Plaintiff, | |
| v. | 11 Civ. 07387 (JSR) |
| CITIGROUP GLOBAL MARKETS INC., Defendant. | ECF Case |

**SEC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR STAY PENDING APPEAL**

Matthew T. Martens
Chief Litigation Counsel
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4481
(202) 772-9362 (facsimile)
Attorney for Plaintiff

# TABLE OF CONTENTS

TABLE OF AUTHORITES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 3

ARGUMENT ........ 5

I. The Filing Of The Notice of Appeal Divests This Court Of Jurisdiction ........ 5

II. To The Extent This Court Retains Jurisdiction, A Stay Of These Proceedings Pending Appeal Is Warranted ........ 6

A. The Commission's appeal has a sufficient possibility of success on appeal ........ 7

1. Established practice ........ 8

2. Federal policy favoring consent judgments ........ 9

3. Appropriate deference to a federal agency ........ 10

B. The Commission and investors it protects will suffer irreparable harm absent a stay ........ 12

C. The balance of the equities favors a stay ........ 12

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abrahams v. Inc. Vill. of Hempstead*, 390 F. App'x 4 (2d Cir. 2010) ................................3

*Alaska ex rel. Atty Gen. Botelho v. Hoffman-La Roche Inc.,* Number Civ. A. 01 1583, 2001 WL 1230932 (D.D.C. Aug. 3, 2001) ........................................................2

*Board of Trade of the City of Chicago v. SEC*, 883 F.2d 525 (7th Cir. 1989).......11, 12, 13

*Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999)..........................................................................................12

*Carson v. American Brands, Inc.*, 450 U.S. 79 (1981) .......................................................8

*Cheney v. U.S. District Ct. for D.C.*, 542 U.S. 367 (2004) .................................................8

*City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974)..........................................2

*In re City of New York*, 607 F.3d 923 (2d Cir. 2010) ........................................................8

*F.T.C. v. Wilcox*, 926 F. Supp. 1091 (S.D. Fla. 1995) ........................................................2

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982).....................................5

*Heckler v. Chaney*, 460 U.S. 821 (1985) ......................................................................10, 11

*Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445 (S.D.N.Y. 2010).........................7, 11

*Mohammed v. Reno*, 309 F.3d 95 (2d Cir. 2002)..........................................................6, 7

*New York State NOW v. Terry*, 886 F.2d 1339 (2d Cir. 1989) ..........................................5

*Oregon ex rel. Lane v. Lane Memorial Gardens*, Civ. A. No. 89-110, 1989 WL 61147 (D. Or. Jan. 31, 1989) ..........................................................................................3

*Rodrigues v. Herman*, 121 F.3d 1352 (9th Cir. 1997) ........................................................9

*SEC v. Clifton*, 700 F.2d 744 (D.C. Cir. 1983) ...............................................................10

*SEC v. Randolph*, 736 F.2d 525 (9th Cir. 1984)..............................................................10

*SEC v. Wang*, 944 F.2d 80 (2d Cir. 1991) ....................................................................9, 10

*St. Charles Tower, Inc. v. Kurtz*, 643 F.3d 264 (8th Cir. 2011)........................................11

*State of New York v. Dairylea Cooperative , Inc.*, 698 F.2d 567 (2d Cir. 1983)................8

*Swift & Co. v. United States*, 276 U.S. 311 (1928)..................................................2, 8, 9

*Thapa v. Gonzalez*, 460 F.3d 323 (2d Cir. 2006)...................................................2, 6, 11

*In re United States*, 503 F.3d 638 (7th Cir. 2007) ..........................................................11

*United States v. AT&T*, 552 F. Supp. 131 (D.D.C. 1982), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001 (1983) .........................................................................9

*United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409 (6th Cir. 1991) .............10

*United States v. Armour & Co.*, 402 U.S. 673 (1971) ......................................................10

*United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990) ...............................10

*United States v. Delta Dental Plan of Arizona, Inc.*, 1995 U.S. Dist. LEXIS 9752 (D. Ariz. May 19, 1995)..................................................................................................9

*United States v. Lexington-Fayette Urban County Government*, 591 F.3d 484 (6th Cir. 2010)..........................................................................................................9

*United States v. Microsoft*, 56 F.3d 1448 (D.C. Cir. 1995) ........................................ 9, 11

*In re World Trade Center Disaster Site Litig.*, 503 F.3d 167 (2d Cir. 2007) ......................6

**FEDERAL STATUTES AND RULES**

Securities Act of 1933

Section 17(a)(2) and (3)……[15 U.S.C. §§ 77q(a)(2) and (3)] .......................1,3, 4

28 U.S.C. § 1292(a)(1)..........................................................................................................8

Federal Rule of Appellate Procedure 8(a)(1)(A) ................................................................1

**MISCELLANEOUS**

18A Wright and Miller, *Federal Practice and Procedure* § 4443 (2d ed. 2002) ................9

Black's Law Dictionary 410 (6th ed. 1990)....................................................................9

Plaintiff U.S. Securities and Exchange Commission ("SEC" or "Commission") submits this memorandum of law in support of its motion for a stay of this matter pending appeal of the Court's Order dated November 28, 2011, rejecting the proposed consent judgment. For the reasons set forth below, the Commission's motion pursuant to Federal Rule of Appellate Procedure 8(a)(1)(A) for a stay pending appeal should be granted to the extent that the Commission's Notice of Appeal does not divest this Court of jurisdiction to continue the proceedings while the appeal is pending.

## INTRODUCTION

On October 19, 2011, the Commission filed a complaint against Citigroup Global Markets, Inc. ("Citigroup") alleging violations of Sections 17(a)(2) and (3) of the Securities Act of 1933 ("Securities Act"). That same day, the Commission submitted to the Court a proposed consent judgment providing for injunctive relief and requiring that Citigroup make a payment of $285 million as well as implement and maintain certain business reforms relating to mortgage-related securities offerings. At the invitation of the Court, the Commission submitted a brief explaining the legal basis and rationale for the proposed consent judgment. The SEC's submission set forth the agency's view that the proposed consent judgment reasonably reflects the scope of relief likely to be obtained by the Commission under the applicable law if successful at a trial on the merits, taking into account the litigation risks likely to be presented, the benefits of avoiding those risks, the willingness of Citigroup to consent to a judgment and not deny liability, and the opportunity to detail publicly in this forum the factual conclusions that led the Commission to pursue this action. The SEC also explained that the proposed settlement would allow the Commission to devote resources that may have been required for this matter to investigations and enforcement actions directed to other fraud and misconduct resulting in loss and harm to investors not before the Court.

The Court rejected the proposed consent judgment. In particular, the Court ruled that the proposed consent judgment was not fair, adequate, reasonable, or in the public interest because it relied on "allegations unsupported by any proven or acknowledged facts whatsoever." Op. at 14. Yesterday, the Commission filed a notice of appeal seeking appellate review of this Court's ruling rejecting the proposed consent judgment. To the extent that the Commission's notice of appeal does not divest this Court of jurisdiction to continue the proceedings while the appeal is pending, the Commission requests that the Court stay the proceedings until the Second Circuit resolves the appeal because the Commission has "some possibility of success" on appeal and "the balance of hardships tips decidedly in [its] favor." *Thapa v. Gonzalez*, 460 F.3d 323, 336 (2d Cir. 2006).

First, the Court erred in requiring an adjudication or admission of certain facts as a condition for the entry of the proposed consent judgment. The Supreme Court has for decades approved the entry of consent judgments containing injunctive relief without the adjudication or admission of facts, and even in the face of a defendant's explicit denial of relevant facts. *See*, *e.g.*, *Swift & Co. v. United States*, 276 U.S. 311 (1928) (refusing to vacate consent judgment containing injunctive relief entered despite defendant's denial of the material allegations of the complaint). The Second Circuit has stated that the process of evaluating a proposed settlement cannot "tur[n] into a trial or a rehearsal of the trial." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974). Indeed, this Court has entered consent judgments without proven or admitted facts. *See*, *e.g.*, *F.T.C. v. Diet Coffee, Inc.*, No. 1:08-cv-00094-JSR (S.D.N.Y. Jan. 10, 2008) (providing that defendant agrees to entry of order "without admitting the allegations of the Commission's Complaint"). Other district courts routinely do the same. *See*, *e.g.*, *Alaska ex rel. Atty Gen. Botelho v. Hoffman-La Roche Inc.*, No. Civ. A. 01 1583, 2001 WL 1230932, at *1 (D.D.C. Aug. 3, 2001) (entering consent judgment that included injunctive relief "without trial or adjudication of any

issues of fact or law"); *F.T.C. v. Wilcox*, 926 F. Supp. 1091, 1102 (S.D. Fla. 1995) (noting that consent judgment containing injunction was entered despite the fact that "no issue of law or fact was ever adjudicated"); *Oregon ex rel. Lane v. Lane Memorial Gardens*, Civ. A. No. 89-110, 1989 WL 61147, at *1 (D. Or. Jan. 31, 1989) (consent decree including injunctive relief entered "without trial or adjudication of any issue of law or fact, before the taking of any testimony at trial, without the admission of liability of any wrongdoing, violations of law, or allegations in plaintiff's complaint"). Given the well-established practice that these authorities reflect, the Commission is likely to prevail on its claim that the Court erred in rejecting the proposed consent judgment in the absence of an adjudication or admission of certain facts. At a minimum, the Commission has shown "some possibility" of success on appeal.

Second, a stay of these proceedings is appropriate because "the balance of hardships" in the absence of a stay tips decidedly in the Commission's favor. The resolution of this matter under the proposed consent judgment would have allowed the Commission to devote resources required for this action to investigations and enforcement activities directed to other securities law violations for the benefit of additional investors. It is those investors who suffer harm if the Commission is required to divert resources to the litigation of this matter while the appeal is pending. In addition, if this action is not stayed, the Commission may lose permanently the benefits of the proposed settlement and be forced to incur the risks and costs of this litigation avoided by the proposed consent judgment. This tips the balance of hardships in favor of a stay pending appeal.

## BACKGROUND

The Commission filed a detailed complaint against Citigroup on October 19, 2011, alleging that Citigroup violated Sections 17(a)(2) and (3) of the Securities Act by making material misrepresentations in connection with a collateralized debt obligation ("CDO") transaction that it

structured and marketed. In particular, the complaint alleged that Citigroup represented that the portfolio of assets in the CDO would be selected by an independent manager, but did not disclose to investors that Citigroup actually exerted significant influence over the selection of approximately half the assets and that Citigroup had taken a short position in those assets. Compl. ¶¶ 1–3. The Commission further alleged that Citigroup realized net profits of $160 million from its transaction-related fees and the short positions that it assumed. *Id.* ¶¶ 4–5.

On the same day it filed the complaint, the Commission presented its proposed consent judgment to the Court for its approval. Under the terms of the consent judgment, Citigroup agreed: (1) to entry of an order enjoining it from violating Sections 17(a)(2) and (3) of the Securities Act; (2) to pay $285 million ($160 million in disgorgement, $30 million in prejudgment interest, and a $95 million civil penalty) into a Fair Fund that the Commission would seek to distribute to injured investors[1]; and (3) to undertake various steps enhancing Citigroup's processes for reviewing and approving mortgage-related securities offerings, including CDO offerings. Citigroup consented to the entry of judgment "[w]ithout admitting or denying the allegations of the complaint (except as to personal and subject matter jurisdiction)."

This Court rejected the proposed consent judgment. It ruled that the consent judgment was "neither fair, nor reasonable, nor adequate, nor in the public interest" because it "does not provide the Court with a sufficient evidentiary basis to know whether requested relief is justified under any of these standards." Or. 8. The Court held that a proposed consent judgment that asks a court to impose injunctive relief "on the basis of allegations unsupported by any proven or acknowledged

---

[1] The proposed judgment stated that the Commission "may" seek to distribute Fair Fund proceeds to injured investors. The use of the conditional "may" reflected that the Commission must obtain the Court's approval before any distributions can occur. The SEC fully intends to return the $285 million recovered as a result of the proposed settlement to harmed investors.

facts whatsoever," Or. 14, cannot be approved because it does not rest on "cold, hard, solid facts, established either by admissions or by trials," Or. 15.

Having rejected the proposed consent judgment because it lacked such "proven or acknowledged facts," the Court directed the parties to prepare for trial. The Court also consolidated this matter with a parallel action brought against a Citigroup employee, *SEC v. Stoker*, No. 11 Civ. 7388 (JSR), adopted the *Stoker* case management order for this case, and ordered the Commission and Citigroup "to be ready to try this case on July 16, 2012." Or. 15. Any dispositive motions must be filed by December 16, 2011 in the *Stoker* case and by January 3, 2012 in the *Citigroup* case. Oral argument on the *Stoker* matter is set for January 25, 2012, while oral argument on the *Citigroup* mater is set for February 6, 2012. The Court ordered that all depositions and discovery must be completed by April 30, 2012.

The Commission yesterday filed its notice of appeal from the Court's order. The Commission will seek expedited review of its appeal.

## ARGUMENT

### I. The Filing Of The Notice of Appeal Divests This Court Of Jurisdiction.

The "filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam); *New York State NOW v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989) (stating that a notice of appeal "divests the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal"). In this instance, the issue on appeal is whether the parties' request to resolve the case through a consent judgment—and avoid the cost and uncertainties of litigation, including the process of trial preparation—should have been approved. *Cf. Abrahams v.*

*Inc. Vill. of Hempstead*, 390 F. App'x 4, 5 (2d Cir. 2010) (unpublished) (holding that a district court lacked jurisdiction to dismiss a complaint for failure to prosecute while an appeal was pending to determine whether a defendant had qualified immunity). Thus, the parties' wish to resolve the dispute on mutually agreeable terms, precluding a proceeding that would otherwise continue, is the central issue on appeal. Accordingly, the Commission believes that the filing of its Notice of Appeal divests the Court of jurisdiction over the proceedings while its appeal is pending.

## II. To The Extent This Court Retains Jurisdiction, A Stay Of These Proceedings Pending Appeal Is Warranted.

The Second Circuit has held that the decision whether to stay a proceeding pending an interlocutory appeal requires consideration of three factors: (1) the likelihood of success on appeal; (2) whether irreparable injury will be sustained absent a stay; and (3) whether a stay will injure the non-appellant or the public. *In re World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007); *Thapa*, 460 F.3d at 334–35; *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002). These interrelated factors are assessed on a sliding scale, and "more of one excuses less of the other." *Mohammed*, 309 F.3d at 101 (internal quotation marks omitted). Thus, "the necessary level or degree of possibility of success will vary according to the court's assessment" of the other factors. *Thapa*, 460 F.3d at 334 (internal quotation marks omitted). Only "some possibility" of success on appeal is sufficient to justify a stay where "the balance of hardships tips decidedly in favor" of the party seeking the stay. *Id.* at 336.

The application of these factors to the case at bar supports the stay of these proceedings pending appeal. We are unaware of any court that has ever before required that "proven or acknowledged facts" be established as a condition to the approval of a proposed consent judgment submitted by a federal government agency. The consistent practice of other courts approving

consent judgments that provide for injunctive relief and do not rest on "proven or acknowledged facts" suggests "some possibility," if not a likelihood, that the Commission will prevail on appeal. At the same time, the Commission and the investors it protects will be substantially and irreparably injured in the absence of a stay in that the Commission will be forced to commit resources to the litigation of this matter rather than to other enforcement matters benefitting additional investors. Citigroup has not asserted that it will be prejudiced by a stay, nor would such a stay negatively impact the public. Accordingly, the Commission respectfully submits that a stay of this proceeding pending resolution of the Commission's appeal should be entered.

**A. The Commission's appeal has a sufficient possibility of success on appeal.**

The first factor – likelihood of success on appeal – weighs in favor of a stay pending appeal. The Second Circuit avoided "setting too high a standard" for the "likelihood of success" factor because "the trial judge is being asked to assess the likelihood that the ruling just made will be rejected on appeal." *Mohammed*, 309 F.3d at 101. Where, as here, an appeal "presents an issue of first impression" over which the "Court of Appeals may disagree" with this Court, "that reason alone" demonstrates a possibility of success. *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 446 (S.D.N.Y. 2010) (Rakoff, J.).

The Commission's mission is to protect investors, and the proposed settlement accomplished that mission because Citigroup disgorged all its ill-gotten gains and agreed to a penalty that was more than half of the maximum that the Commission could have obtained at trial under the applicable statute ($95 million, as compared with $160 million). In other words, the proposed resolution here – including the injunctive relief – reasonably reflects the relief that the Commission would likely recover were it to prevail in litigation of this matter. The Commission made the reasonable judgment that expending additional resources to attempt to obtain an

adjudication of the facts is not justified in light of the adequacy of the relief obtained, the litigation risks associated with trial, and the need to devote those resources to other matters.

At the same time, the public was adequately informed about Citigroup's misconduct. The Commission, after a thorough investigation, authorized the filing of a detailed complaint describing Citigroup's misconduct. Citigroup has not contested those allegations in this proceeding. Furthermore, the Commission submitted two memoranda to the Court explaining the Commission's reasons for entering the settlement.

Given this record, the Commission is likely to prevail on appeal because the Court's ruling conflicts with three long-standing principles and practices concerning consent judgments entered into by federal agencies: (1) the well-established and oft-approved practice of federal agencies entering into consent judgments providing for injunctive relief in which defendants do not admit to the allegations in the complaint; (2) the federal policy favoring settlements by consent judgment; and (3) the strong deference afforded to federal agencies presenting proposed consent judgments for approval.[2]

**1. Established practice**

For nearly a century, courts have approved consent judgments providing for injunctive relief in government enforcement actions notwithstanding the absence of an adjudication or admission of the material factual allegations of the complaint. *Swift,* 276 U.S. at 327; *United States*

---

[2] The Commission believes that the Court's decision is a reviewable interlocutory order pursuant to §28 U.S.C. 1292(a)(1). *Carson v. American Brands, Inc.*, 450 U.S. 79, 89 (1981); *State of New York v. Dairylea Coop., Inc.*, 698 F.2d 567, 570 (2d Cir. 1983). The Commission alternatively will seek a writ of mandamus so that in the event that the Second Circuit concludes that it lacks jurisdiction under Section 1292(a)(1), the order nevertheless will be reviewable. *In re City of New York*, 607 F.3d 923, 939–40 (2d Cir. 2010), quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (stating the standards for issuance of a writ of mandamus)

*v. Microsoft*, 56 F.3d 1448, 1461 (D.C. Cir. 1995). The entry of consent judgments providing for injunctive relief without admissions is a frequent occurrence across the public law spectrum. *E.g.*, *United States v. Lexington-Fayette Urban County Gov't*, 591 F.3d 484, 486 (6th Cir. 2010) (Clear Water Act); *Rodrigues v. Herman*, 121 F.3d 1352, 1354 (9th Cir. 1997) (ERISA); *Microsoft*, 56 F.3d at 1461 (Sherman Act); *United States v. AT&T*, 552 F. Supp. 131, 143, 211 (D.D.C. 1982), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001 (1983) (Sherman Act; breakup of AT&T). They are so much the norm that *Black's Law Dictionary* has defined a "consent decree" as a judgment "whereby the defendant agrees to stop alleged illegal activity without admitting guilt or wrongdoing," Black's Law Dictionary 410 (6th ed. 1990), and the leading civil procedure treatise states that the "central characteristic of a consent judgment is that the court has not actually resolved the substance of the issues presented," 18A Wright and Miller, *Federal Practice and Procedure* § 4443, at 256–57 (2d ed. 2002). Indeed, federal courts, including this one, have approved consent judgments in which defendants expressly *deny* liability without any suggestion that such a practice contravenes the public interest. *E.g.*, *United States v. New Puck, LP*, No. 1:04-cv-05449-JSR, at 2 (S.D.N.Y. Jul. 14, 2004) (Americans with Disabilities Act); *United States v. Delta Dental Plan of Arizona*, *Inc*., 1995 U.S. Dist. Lexis 9752, at *1 (D. Ariz. May 19, 1995) (Sherman Act). Likewise, the Commission should not be required to forgo settlements that otherwise provide substantial relief – including the return of funds to investors and a requirement that important business reforms be implemented and maintained – in the absence of an admission by the defendant.

**2. Federal policy favoring consent judgments**

Rejecting settlements in the absence of adjudicated or admitted facts cuts against the "strong federal policy favoring the approval and enforcement of consent decrees." *SEC v. Wang*,

944 F.2d 80, 85 (2d Cir. 1991). The Supreme Court has long endorsed the use and entry of consent judgments, which like all settlements, embody a compromise that preserves the resources of the courts and the parties, who "save themselves the time, expense, and inevitable risk of litigation." *E.g.*, *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971); *Swift*, 276 U.S. at 324–27. The preservation of resources is particularly important when federal agencies like the Commission are involved: the Commission is able to "conserve its own and judicial resources" while still obtaining disgorgement, penalties, and other remedies that ultimately benefit investors. *SEC v. Clifton*, 700 F.2d 744, 748 (D.C. Cir. 1983).

**3. Appropriate deference to a federal agency**

The rule announced in the Court's order does not afford the Commission the strong deference owed "to the government agency that has negotiated and submitted the proposed judgment." *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984). Judicial review of proposed consent judgments is to be limited, and "[u]nless a consent decree is unfair, inadequate, or unreasonable, it ought to be approved." *Wang*, 944 F.2d at 85 (internal quotation marks omitted). The court's role is not to decide "whether the settlement is one which the court itself might have fashioned, or considers as ideal," *United States v. Cannons Eng'g* Corp., 899 F.2d 79, 84 (1st Cir. 1990), or to withhold approval unless it determines that "this is the best possible settlement that could have been obtained," *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991).

Review is limited, in significant part, because the deference owed to agencies has a constitutional dimension. As with all federal agencies, the Commission's decision to investigate, to prosecute, and to settle is solely an executive function. *Heckler v. Chaney*, 460 U.S. 821, 831 (1985). Agencies, such as the Commission, "must not only assess whether a violation has

occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if its acts," and whether the certain benefits for investors obtained through settlement outweigh the costs and risks posed by trial. *Id.* at 831–32. The Court's order usurps the Commission's ability to allocate its resources, to mitigate litigation risk, and to obtain substantial benefits for investors in the exercise of its best and reasonable judgment. *See Microsoft*, 56 F.3d at 1457 (in denying a proposed consent decree, a district judge "impermissibly arrogated to himself the President's role 'to take care that the laws be faithfully executed'"); *Board of Trade v. SEC*, 883 F.2d 525, 531 (7th Cir. 1989) ("Judges can make allocative decisions only by taking over the job of planning the agency's entire agenda, something neither authorized by statute nor part of their constitutional role.").

Judicial review, of course, is not a mere rubber stamp. A court may reject a proposed consent judgment if, for instance, it disregards applicable federal or state law or if the decree would impose an unreasonable burden on judicial resources. *E.g.*, *St. Charles Tower, Inc. v. Kurtz*, 643 F.3d 264, 268 (8th Cir. 2011) (rejecting a proposed consent judgment because the parties, in essence, agreed to violate local zoning laws); *In re United States*, 503 F.3d 638, 641 (7th Cir. 2007) (noting that a judge may reject a proposed consent decree "if implementing the decree would create a drain on judicial resources"). But a settlement should not be rejected because it does not include "proven or acknowledged facts," Or. 14, even though the settlement obtains a substantial portion of what the Commission could have obtained at trial while eliminating all litigation risk.

In sum, the Court should grant the stay because the Commission has demonstrated some possibility of success on a substantial "issue of first impression" over which the "Court of Appeals may disagree" with this Court. *Thapa*, 460 F.3d at 336; *Jock*, 738 F. Supp. 2d at 446.

**B. The Commission and investors it protects will suffer irreparable harm absent a stay.**

A failure to enter a stay of this matter pending appeal will irreparably injure the Commission and the investors that it protects. As the courts have recognized, the administration of an enforcement program by a federal regulatory agency requires the prioritization and allocation of resources. *Board of Trade*, 883 F.2d at 531 ("Agencies must compare the value of pursuing one case against the value of pursuing another; declining a particular case hardly means that the SEC's lawyers and economists will go twiddle their thumbs; case-versus-case is the daily tradeoff."). Here, the absence of a stay will require the Commission to allocate substantial resources to the litigation of this matter, rather than to additional matters seeking to protect yet more investors. Even with an expedited appeal process, which the Commission will seek, the Commission must immediately begin preparing for trial. It must coordinate discovery, take depositions, draft pretrial motions, and respond to dispositive motions, all of which consume resources. Moreover, if Citigroup seeks to dismiss the case, dispositive motions must be filed—and may be ruled upon—before the Second Circuit will be able to decide the Commission's appeal. A favorable Second Circuit decision reversing the November 28 order will not return the Commission to the position it previously occupied because, absent a stay, the Commission will have already committed resources to a matter that it intended to settle. *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249–50 (2d Cir. 1999). A stay pending appeal is needed to prevent that irreparable injury to the Commission's enforcement program and the investors it protects.

**C. The balance of the equities favors a stay.**

Finally, a balancing of the equities here counsels in favor of a stay. Citigroup has not asserted that it will be prejudiced by a stay pending appeal. At the same time, staying the case

pending appeal will affirmatively benefit the public. As noted above, a stay pending appeal will permit the Commission to utilize its resources on other matters than this litigation for the benefit of investors. "Resource allocation" is "governed by budgets and opportunities," and, as a result, "case-versus-case is the daily tradeoff" that the Commission must contemplate. *Board of Trade*, 883 F.2d at 531. While the Court sees "the case at hand," it does not see "all the tasks the staff may accomplish with the time released"; only the Commission fully understands "the opportunity costs of reallocations within the agency." *Id.* The time and energy spent preparing for this trial, in a matter where the Commission, accounting for litigation risk, has already obtained most of the relief it reasonably could hope to obtain at trial, is better directed towards other investor-protection efforts while the Second Circuit decides an appeal that will determine whether a trial ever occurs. The public undoubtedly has a general interest in speedy resolution of trials. But delaying trial in this matter by a few months while the appeal is pending will not harm the public interest, particularly given that the Second Circuit's decision may result in the approval of a consent judgment that would result in the prompt creation of $285 million fund to benefit injured investors.

## **CONCLUSION**

For the reasons described above, this matter should be stayed pending resolution of the Commission's appeal.

Dated: Washington, D.C.
December 16, 2011

Respectfully submitted,

*/s/ Matthew T. Martens*

Matthew T. Martens (MM5450)
Chief Litigation Counsel
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4481
(202) 772-9362 (fax)
martensm@sec.gov