UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>                Plaintiff,<br><br>                v.<br><br>CITIGROUP GLOBAL MARKETS INC.,<br><br>                Defendant. | 11-cv-7387 (JSR) |

**PLAINTIFF U.S. SECURITIES AND EXCHANGE COMMISSION'S SUBMISSION OF DISTRIBUTION AGENT'S STATUS REPORT**

Plaintiff United States Securities and Exchange Commission ("SEC" or the "Commission") respectfully submits this Status Report on behalf of RCB Fund Services, LLC, ("RFS") the Court-appointed Distribution Agent in the above-captioned matter. This Court's Order of May 23, 2017 (the "2017 Order") appointed RFS as the distribution agent to administer the Citigroup Global Markets Inc. Fair Fund (hereinafter the "CGMI Fair Fund"). This status report is intended to inform the Court of the progress of the distribution to date.

*Background*

The SEC filed a complaint alleging that Citigroup Global Markets Inc. ("CGM") violated the antifraud provisions of the Securities Act of 1933 (Sections 17(a) (2) and (3)), by, among other things, making misrepresentations regarding the selection of assets for the collateralized debt obligation ("CDO") called Class V Funding III (the "Funding") and failing to disclose CGM's financial interest in the transaction.

The 2017 Order established the CGMI Fair Fund to distribute disgorgement, prejudgment interest and a civil penalty totaling approximately $288 million paid by CGM.[1]  Pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act, the CGMI Fair Fund will be distributed to investors that were harmed by misrepresentations and omissions of material facts made in connection with the marketing of the Funding.

The 2017 Order appointing RFS as distribution agent directed RFS to:

> *work with the Commission's staff in formulating a methodology for allocating the fair fund, determining the identities of injured investors and investor harm, establishing a process to evaluate and verify claims, drafting a distribution plan and obtaining the Court's approval of the plan, fielding inquiries from investors, and overseeing the ultimate distribution of the CGMI Fair Fund.*[2]

This Status Report details the steps taken by RFS thus far to fulfill its role.

*Formulating a Methodology for Allocating the Fair Fund*

The initial question regarding administration of the CGMI Fair Fund was the sequencing of the administration process.  In traditional fair fund cases, the distribution agent consults with the Commission staff and then develops a distribution plan containing eligibility standards, timetables and other administrative provisions.  The draft distribution plan is proposed to the relevant court, and if approved, the plan is published to potential claimants.  After the plan is finalized and published, injured investors submit claims for evaluation by the distribution agent as to both eligibility and amount of loss under the standards of the plan.  The distribution agent reviews its analysis with the SEC staff prior to submitting recommendations for payment to the

---

[1] The Commission brought a related administrative proceeding against Credit Suisse Alternative Capital, Inc. ("CSAC") and a CSAC affiliate which resulted in the entry of an Order requiring CSAC and an affiliate to pay $2.55 million; these monies have been added to the CGMI Fair Fund.
[2] Order Establishing a Fair Fund and Appointing Distribution Agent (May 23, 2017).

court.  Thus, most fair fund administrations are "front loaded" and begin with drafting a plan of distribution, and then proceed to determining which claimants are eligible for a recovery.

For the CGMI Fair Fund, the Commission staff has been of the view that the process described above should be reversed.  Shortly after RFS was appointed, the Commission staff advised it that, because the number of potential claimants for CGMI Fair Fund is very small, the staff believed that a "reverse" process would be more desirable.  In this approach, RFS would solicit submissions from the small number of investors in the Funding as an initial step.  After analyzing all investor submissions and discussing the facts with the Commission staff, RFS would draft a plan designed to apportion the CGMI Fair Fund among those investors found to be eligible.

Federal courts have approved using this "back end" approach in three cases involving misconduct in the offer and sale of collateralized debt obligations.[3]  In these cases the Commission has preferred an approach of developing a distribution plan that details the eligible parties and the amounts.

Following the Court's 2017 Order, RFS had discussions with the Commission staff concerning both the staff's views regarding sequencing of the plan of distribution, and also information developed by the staff during its investigation relating to investors in Funding.  At the same time, RFS began discussing the CGMI Fair Fund with counsel for several of the Funding investors.

As a result of these discussions, the Commission staff decided, with RFS's concurrence, that development of a plan should follow an analysis of all the relevant information and materials, including submissions from the investors.  With this approach in place, RFS began to

---

[3] See *SEC v. Goldman, Sachs & Co. and Fabrice Tourre*, 10-CV-3229 (Jones, J.) (S.D.N.Y. filed April 15, 2011); *SEC v. J.P. Morgan Securities LLC (f/k/a J.P. Morgan Securities Inc.)*, 11-CV-4206 (Berman, J.) (S.D.N.Y. filed June 21, 2011); *SEC v. Mizuho Securities USA Inc.*, 12-CV-5550 (Preska, J.) (S.D.N.Y. filed July 18, 2012).

direct correspondence to investors in Funding to make certain that they were aware of the CGMI Fair Fund.  RFS also provided investors with instructions regarding the process moving forward.

*Determining the Identities of Injured Investors*

Given the limited number of investors in the Funding, the Distribution Agent and Commission staff jointly decided that an extensive outreach program, including a formal notice publication in a periodical or via the internet, was not necessary.  Instead, the Commission staff provided RFS with a list of the Funding investors, as well as contact information for certain representatives of those investors.  Given the passage of time since the conduct at issue, RFS performed additional research to supplement the list of potential contacts. With input from the Commission staff, RFS developed a notice to be mailed directly to representatives of each of the Funding investors.

On December 21, 2017, RFS began mailing notices to identified points of contact for each of the Funding investors.  The notices were sent via USPS certified mail to enable RFS to track the delivery and receipt of such notices.  In some instances, the notices went undelivered. In those cases, RFS performed additional research to either identify an updated address for the recipient, or to identify another appropriate point of contact for that investor. To date, RFS has mailed more than two dozen notices to Funding investors.  At least one representative for each of the investors on the list provided by the Commission has received a notice, and in most cases multiple representatives of an investor received one.

While a plan of distribution was not yet in place to govern how the CGMI Fair Fund will be distributed, the notice provided investors who may be potentially eligible for a recovery from the CGMI Fair Fund with details regarding the factors that will be considered in developing a

plan of eligibility.  The notice invited investors to submit information detailing their participation in the Funding and to describe why the investor should be eligible for a recovery from the CGMI Fair Fund.[4]  The notice requested that investors provide details regarding their investment as well as other information, including:

- Background information about the investor entity;

- An explanation of the investment in the Funding generally, including factors such as: when the initial investment was made and the tranche, the total amount of the investment, and how long the investor held the investment,;

- Disclosure of any premium payments received by the investor and the dates and the amounts of such payments;

- Disclosure of any lawsuits or other proceedings the investor pursued to recover losses from its investments in the Funding and any payments received by the investor in connection with such lawsuits or proceedings; and

- Disclosure of any other payments received by the investor that constitute a recovery for the investor's losses from its investments in the Funding (*e.g.*, insurance recoveries).

The notice required submissions to be postmarked within 60 days from the date of the notice.  Due to some difficulty confirming delivery of the notice to representatives of one of the Funding investors, some parties did not receive a copy of the notice until late February, 2018.

In addition, as part of the outreach program to the Funding investors, RFS developed a website to facilitate the sharing of updates and information.  The website can be found at www.citicdofairfund.com.  RFS also established a customer service hotline and email address to facilitate the direct communication with potential claimants to the CGMI Fair Fund.

*Establishing a Process to Evaluate and Verify Claims and Fielding Inquiries from Investors*

---

[4] Enclosed for the Court as Appendix A to this filing is a copy of the notice that was sent to each of the Funding investors.

Thus far, RFS has received four (4) submissions from investors in the Funding, which include approximately 2,500 pages of material. All of these submissions have been received and scanned into a database RFS has developed for the CGMI Fair Fund. RFS has acknowledged receipt of information from all investors that made a submission to the CGMI Fair Fund.

RFS will work directly with Commission staff throughout the course of the evaluation of the submissions. The material in the submissions, as well as related material provided by the Commission, will be considered before finalizing a plan of distribution for the CGMI Fair Fund. RFS, in conjunction with the SEC, will seek to determine which investors suffered an economic loss as a result of an investment in the Funding, verifying that the investor has adequately proven an economic loss by providing documentation of the original investment(s), premium payments received, associated hedges, or any recoveries received.

In addition, as necessary, RFS will set up meetings with the Funding investors and/or their counsel to insure the Commission staff and RFS have a complete record upon which to make a determination of eligibility for each investor.

*Anticipated Timeline Going Forward*

RFS expects to complete the review of each of the submissions as well as all related material by December, 2018. Using the information in the submissions as well as any supplemental material provided by the investors during the administration process, RFS plans to develop a plan of distribution for the CGMI Fair Fund that, after review by the Commission staff, will be filed with the Court. The plan of distribution will be formulated with a goal of providing a fair and reasonable distribution of the CGMI Fair Fund assets to those investors that suffered economic losses as a result of CGM's misconduct. Barring any unforeseen events or

delays, RFS expects to file a plan of distribution and distribute the CGMI Fair Fund in the first quarter of 2019.

Dated: August 13, 2018	Respectfully submitted,

s/ Nancy Chase Burton_____
Nancy Chase Burton (CO Bar #10615)
Attorney for Plaintiff
Securities and Exchange Commission
100 F Street, NE
Washington, DC  20549-5631
Telephone:  (202) 551-4425
Facsimile: (202) 772 9363
E-mail: burtonn@sec.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2018, a copy of the Plaintiff U.S. Securities And Exchange Commission's Submission of Distribution Agent's Status Report. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

By: /s/ Nancy Chace Burton
Nancy Chase Burton